1 DAVID B. GOLUBCHIK (SBN 185520)
ANTHONY A. FRIEDMAN (SBN 201955)
2 LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.
10250 Constellation Blvd., Suite 1700
3 Los Angeles, California 90067
Telephone: (310) 229-1234
4 Facsimile: (310) 229-1244
Email: dbg@lnbyb.com; aaf@lnbyb.com
5

6 Attorneys for Howard B. Grobstein, Chapter 7 Trustee

7 **UNITED STATES BANKRUPTCY COURT**

8 **CENTRAL DISTRICT OF CALIFORNIA**

9 **RIVERSIDE DIVISION**

10

| | |
|---|---|
| 11 **In re** | **Case No.: 6:18-bk-13630 WJ** |
| 12 **WINDSOR HOLDINGS, LLC,** | **Chapter 7** |
| 13 **Debtor.** | **CHAPTER 7 TRUSTEE'S MOTION TO APPROVE COMPROMISE OF CONTROVERSY WITH LARRY WILLIAMS, NEW GRAND SENIOR LIVING, LLC AND WINDSOR BUSINESS SOLUTIONS, LTD.** |
| 14 | |
| 15 | |
| 16 | |
| 17 | **MEMORANDUM OF POINTS AND AUTHORITIES AND** |
| 18 | |
| 19 | **DECLARATION IN SUPPORT THEREOF** |
| 20 | |
| 21 | **[Federal Rule of Bankruptcy Procedure 9019; Local Bankruptcy Rule 9013-1(o)(1)]** |
| 22 | |
| 23 | **[No Hearing Required]** |

24

25     **TO THE HONORABLE WAYNE JOHNSON, UNITED STATES BANKRUPTCY**

26 **JUDGE:**

27     Howard B. Grobstein, the Chapter 7 Trustee (the "Trustee") for the bankruptcy estate of

28 Windsor Holdings, LLC (the "Debtor"), hereby files this motion (the "Motion") for an order,

pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure and Local Bankruptcy Rule 9013-1(o)(1), approving the Settlement Agreement and Release (the "Settlement Agreement") entered into by and between the Trustee and Larry Williams ("Williams"), New Grand Senior Living, LLC ("New Grand") and Windsor Business Solutions, Ltd. ("WBS" and collectively with Williams and New Grand, the "Williams Parties") concerning that certain adversary proceeding currently pending and bearing case number 6:19-ap-01146 WJ (the "Adversary Proceeding").

Prior to the Adversary Proceeding, the Trustee and the Williams Parties entered into that certain *Binding Term Sheet For Sale Of Substnatially [sic] All Assets Of Estate* (the "Sale Agreement") with respect to the Debtor's "fee simple" interest in real property located at 401 Broad Street, Wichita Falls, Texas 76301 (the "Property") and the Trustee's administration of the Property.   Shortly thereafter, the Trustee contends that the Williams Parties breached their obligations under the Sale Agreement.   As a result, the Trustee commenced the Adversary Proceeding against the Williams Parties in an effort to enforce the Sale Agreement. Following extensive negotiations, the Trustee and the Williams Parties have agreed, pursuant to the terms of the Settlement Agreement, to resolve the Trustee's claims against the Williams Parties, and provides, inter alia, that:

1.   Upon Bankruptcy Court approval of the Settlement Agreement, WBS shall file in the Bankruptcy Case a withdrawal of POC 9 (as that term is defined in the Settlement Agreement).   In the event that WBS fails to file a withdrawal of POC 9 in the Bankruptcy Case, POC 9 shall be deemed withdrawn as against the Debtor's estate with prejudice.

2.   The Williams Parties, and each of them, shall fully respond and produce documents, as required, without objection, to the Discovery on or before December 31, 2020, however, should the Williams Parties pay the Settlement Proceeds (as that term is defined in paragraph 3, below) consistent with terms set forth in paragraphs 3. i. and 3. ii., the Williams Parties requirement to respond to the Discovery shall terminate.   For the sake of clarity, if the Settlement Proceeds are not paid timely and

2

the Increased Settlement Proceeds (as that term is defined in paragraph 3. iii., below) amount becomes operative, the Williams Parties, and each of them, will be required to fully respond and produce documents, as required, without objection, to the Discovery on or before December 31, 2020.

3.      In exchange for dismissal of the Complaint and Adversary Proceeding, the Williams Parties shall pay $15,000 (the "Settlement Proceeds") to the Trustee.   The Settlement Proceeds shall be paid as follows:

    i.    $10,000 to the Trustee on or before December 7, 2020.

    ii.   $5,000 to the Trustee on or before December 14, 2020.

    iii.  In the event that either payment set forth in paragraphs 1.4.1 and 1.4.2, above, are not timely paid in full, the Settlement Proceeds shall be increased to $30,000, less any amounts received for earlier payments by the Williams Parties under this Agreement (the "Increased Settlement Proceeds") with the Increased Settlement Proceeds to be paid by the Williams Parties on or before December 31, 2020.

    iv.   As a condition to dismissal of the Complaint and Adversary Proceeding, the Williams Parties, and each of them, agree to execute and provide to the Trustee at the same time as the execution and return of the Settlement Agreement, a stipulated judgment in the amount of $100,000, less any payments received pursuant to paragraphs 3. i. – iii., above,  in favor of the Trustee and as against the Williams Parties, and each of them, a copy of which is attached as Exhibit "A" to the Settlement Agreement (the "Judgment").   The Trustee agrees to hold the Judgment in trust pending payment in full of the Settlement Proceeds and/or the Increased Settlement Proceeds. If the Settlement Proceeds and/or Increased Settlement Proceeds are paid to the Trustee in full when due, the Trustee will return the fully executed Judgment to the Williams Parties.  In the event of a default, the Trustee is authorized to immediately lodge the Judgment with the Bankruptcy Court having jurisdiction over the Adversary Proceeding and upon entry of the Judgment, record the Judgment against the Property.

4.      The Williams Parties, or their designee, shall purchase the Property from Trustee, and Trustee shall sell to Williams Parties, or their designee, the Property and all assets related thereto including, without limitation, all permits, drawings, architectural renderings and other

3

documents, records and rights related to the development of the Property free and clear of all liens, claims and interests, subject to the Bankruptcy Court approval and overbidding, and the following terms and conditions:

i.   The purchase of the Property by the Williams Parties, or their designee, shall be in the amount equal to all secured and unsecured debt repayment plus all administrative costs of the estate, with all payoff demands to be provided to the Trustee by January 15, 2021, and sale closing by February 15, 2021 or such other dates determined in the sole discretion of the Trustee, however, such shall not be binding on the Trustee or the estate on the basis that the Trustee shall only close such sale upon either satisfaction, payment or sufficient reserves to satisfy all claims of the Debtor's bankruptcy estate.

ii.  No later than January 8, 2021, the Williams Parties shall draft and enter into a formal sale agreement which will incorporate the material terms of the proposed sale for inclusion in a motion to approve the sale following review and approval of the payoff demands for all creditors secured by the Property.  In the event that the parties do not agree on a form of formal sale agreement, the Trustee has no obligation to sell the Property to the Williams Parties, or their designee, and may dispose of the Property in the sole discretion of the Trustee.

iii. The closing of the sale transaction shall be not later than 90 days after the date of entry of order approving the sale.

iv.  The Williams Parties shall provide the Trustee with evidence reasonably satisfactory to the Trustee that the Property is adequately insured at which time the Trustee will terminate insurance procured by the Trustee.  Any policy procured by the Williams Parties shall name the Trustee as an additional insured.  Further, any policy procured by the Williams Parties cannot be terminated or modified absent at least seven (7) business days' prior notice to the Trustee.

v.   Pending the closing of the contemplated sale transaction or the denial of the such sale by the Bankruptcy Court, the Williams Parties shall be solely responsible for maintaining and preserving the Property at no expense to the Trustee and the Debtor's bankruptcy estate and shall cooperate with the Trustee's inquiries and efforts related thereto.

vi.  Upon the closing of the contemplated sale transaction, in addition any other orders of the Court, any and all claims asserted by any of the Williams Parties against the Debtor's bankruptcy estate, including, without limitation, any and all pre-petition or post-petition claims of Williams, New Grand, and WBS (including POC 9 filed against Debtor's estate) (the "Insider Claims"), shall be deemed waived,

4

forgiven, withdrawn and of no force or effect.  For the avoidance of doubt, the amount of the Consideration to be paid pursuant to the contemplated sale shall exclude the amount of the Insider Claim, which shall be released as provided hereinabove.

The Motion is made pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure on the grounds that the Trustee has determined that it is in the best interest of the estate to settle his disputes with the Williams Parties given the inherent risks and expense associated with litigation, and the legal issues related to enforcing the Sale Agreement, taking into the account that the Sale Agreement was not previously approved by the Court.  The Settlement Agreement is the product of the parties' extensive negotiations and ultimate cooperative resolution.  The Trustee negotiated the Settlement Agreement, taking into account, among other things, the costs of litigation and the likelihood of success on the legal merits of the disputed issues. Indeed, under the Settlement Agreement, the Trustee concludes the litigation of the Adversary Proceeding in exchange for a payment to the estate of $15,000 (subject to a stipulated judgment if not paid in the amount of $100,000), the withdrawal of POC 9 in the amount of $1,379,093.00 and obtains an agreement from the Williams Parties to purchase the Property for the amount of all claims against the Debtor's estate.  Accordingly, the Trustee submits that the compromise is fair and reasonable and should, therefore, be approved by the Court.

The Motion is based upon the Notice of Motion filed concurrently herewith, this Motion, the Memorandum of Points and Authorities, the Declaration of Howard B. Grobstein, and the exhibit attached hereto, the entire record in this case, and such further evidence as may be made.

**WHEREFORE**, the Trustee respectfully requests that the Court enter an order:

1.      Granting the Motion;

2.      Approving the Settlement Agreement;

3.      Authorizing and directing the Trustee and the Williams Parties to take any and all steps necessary to effectuate the Settlement Agreement, which is attached hereto as Exhibit 1; and

1         4.    Granting such other and further relief as the Court deems just and proper.

2    DATED:  December 8, 2020                LEVENE, NEALE, BENDER,
3                                      YOO & BRILL L.L.P.

4                               By:   /s/ Anthony A. Friedman

5                                    DAVID B. GOLUBCHIK
                                ANTHONY A. FRIEDMAN
6                            Attorneys for Howard B. Grobstein, Chapter 7
                        Trustee for the estate of Windsor Holdings, LLC

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **MEMORANDUM OF POINTS AND AUTHORITIES**

### **I.**

### **STATEMENT OF FACTS**

**A.     General Background**

1.     On or about April 30, 2018 (the "Petition Date"), the Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code, bearing case number 6:18-bk-13630-WJ (the "Bankruptcy Case") [Main Bankruptcy Case Docket No. 1].  On May 1, 2019, the Bankruptcy Court entered an order converting the Bankruptcy Case to one under Chapter 7 of the Bankruptcy Code [Main Bankruptcy Case Docket No. 64].   Thereafter, the Trustee was appointed Chapter 7 trustee of the Debtor's estate, a capacity in which he continues to serve.

**B.     The Dispute and Settlement Thereof**

2.     As set forth in the Debtor's Schedules of Assets and Liabilities [Main Bankruptcy Case Docket No. 1] (the "Schedules"), the Debtor has a "fee simple" interest in real property located at 401 Broad Street, Wichita Falls, Texas 76301 (the "Property").  The Trustee is informed that the Property is a two hundred and forty-one (241) room hotel which, prior to conversion to Chapter 7, the Debtor was planning on converting to senior apartment facility.

3.     The Property is encumbered by secured claims of third party creditors.   In addition, numerous unsecured creditors have asserted claims against the Debtor's estate, including, without limitation, Proof of Claim 9-1 ("POC 9") filed by WBS, whereby WBS has asserted a general unsecured claim in the amount of $1,379,093.00.

4.     Williams advised the Trustee that the Williams Parties, through a related entity, desired to acquire the Property and related assets from the Debtor's estate.  The Williams Parties advised the Trustee that they completed any and all necessary due diligence related to the purchase of the Property and related assets and procured financing required for the transaction. As a result, the Williams Parties advised the Trustee that they were ready and willing to enter into that certain *Binding Term Sheet For Sale Of Substnatially [sic] All Assets Of Estate* (the "Sale Agreement") and proceed with the acquisition of the Property and related assets.

5.     The Sale Agreement provided, *inter alia*, as follows:

a. Pursuant to the terms of the Sale Agreement, New Grand shall purchase from Trustee, and Trustee shall sell to New Grand (the "Sale"), the Property and all assets related thereto including, without limitation, all permits, drawings, architectural renderings and other documents, records and rights related to the development of the Property (the "Property Assets") free and clear of all liens, claims and interests as discussed in the Sale Agreement.

b. The consideration for the Sale shall be payment or satisfaction of any and all claims asserted against the Debtor's bankruptcy estate (the "Consideration").

c. The Williams Parties shall transfer to the Trustee a deposit for the Sale in the amount of $100,000 (the "Deposit") pursuant to the following schedule:
    i.   $75,000.00 not later than September 17, 2019; and
    ii.  $25,000.00 not later than October 8, 2019.

d. Upon receipt of the Deposit, the Trustee, at his sole discretion, is authorized to use the Deposit funds for payment of all incurred but unpaid insurance obligations for the Chapter 7 period, including to pay for amounts that are currently due or become due for the Estate Policy, with the balance of the Deposit to be retained pending further order of the Court.

e. Upon execution of this Term Sheet, Williams Parties shall provide Trustee with evidence reasonably satisfactory to the Trustee that the Property is adequately insured by a policy other than the Estate Policy (an "Other Policy") at which time the Trustee will terminate Estate Policy procured by the Trustee.  Any Other Policy procured by Williams Parties shall name Trustee as an additional insured. Further, any Other Policy procured by Williams Parties cannot be terminated or modified absent at least seven (7) business days' prior notice to Trustee.

f. Pending the closing of the Sale transaction or the denial of the Sale by the Court, Williams Parties shall be solely responsible for maintaining and preserving the Property at no expense to the Trustee and the Debtor's bankruptcy estate and shall cooperate with the Trustee's inquiries and efforts related thereto.

6.    Thereafter, the Trustee contends that the Williams Parties defaulted under the Agreement.  The Williams Parties dispute the Trustee's contention.

7.    As a result, on October 18, 2019, the Trustee filed his *Complaint for: (1) Breach of Contract; (2) Specific Performance; (3) Turnover; and (4) Disallowance of Claims* (the "Complaint") [Adversary Proceeding Docket No. 1] against the Williams Parties, thereby commencing an adversary proceeding, bearing case number 6:19-ap-01146 WJ (the "Adversary Proceeding").

8

8.    On November 21, 2019, the Williams Parties filed their answer to the Complaint [Adversary Proceeding Docket No. 5].

9.    On June 26, 2020, in connection with the Trustee prosecution of the Complaint and Adversary Proceeding, the Trustee propounded requests for admissions, requests for production of documents and special interrogatories to the Williams Parties, and each of them (the "Discovery").   The Williams Parties have not responded to the Discovery.

10.    The Williams Parties have further advised the Trustee that the Williams Parties have been and are currently providing security and other maintenance services related to the Property post-petition and after the appointment of the Trustee for which the Debtor's estate has not been charged fees or costs.

11.    The Williams Parties have advised the Trustee that the Williams Parties, through a related entity, seek to acquire the Property and related assets from the Debtor's estate.  In that capacity, the Williams Parties have advised the Trustee that they have completed any and all necessary due diligence related to the transaction and procured financing.  As a result, the Williams Parties have advised the Trustee that they are prepared to proceed with the acquisition of the Property, subject to overbidding.

12.    Following lengthy negotiations, the Parties herein have agreed to settle the disputes between them regarding the Property, POC 9, the Complaint and Adversary Proceeding upon the terms and subject to the conditions set forth in this Settlement Agreement. The Settlement Agreement provides, inter alia, that:

1.    Upon Bankruptcy Court approval of this Agreement, WBS shall file in the Bankruptcy Case a withdrawal of POC 9.   In the event that WBS fails to file a withdrawal of POC 9 in the Bankruptcy Case, POC 9 shall be deemed withdrawn as against the Debtor's estate with prejudice.

2.    The Williams Parties, and each of them, shall fully respond and produce documents, as required, without objection, to the Discovery on or before December 31, 2020, however, should the Williams Parties pay the Settlement Proceeds (as that term is defined in paragraph 3, below) consistent with terms set forth in paragraphs

9

3. i. and 3. ii., the Williams Parties requirement to respond to the Discovery shall terminate.  For the sake of clarity, if the Settlement Proceeds are not paid timely and the Increased Settlement Proceeds (as that term is defined in paragraph 3. iii., below) amount becomes operative, the Williams Parties, and each of them, will be required to fully respond and produce documents, as required, without objection, to the Discovery on or before December 31, 2020.

3.      In exchange for dismissal of the Complaint and Adversary Proceeding, the Williams Parties shall pay $15,000 (the "Settlement Proceeds") to the Trustee.   The Settlement Proceeds shall be paid as follows:

     i.   $10,000 to the Trustee on or before December 7, 2020.

     ii.   $5,000 to the Trustee on or before December 14, 2020.

     iii.   In the event that either payment set forth in paragraphs 1.4.1 and 1.4.2, above, are not timely paid in full, the Settlement Proceeds shall be increased to $30,000, less any amounts received for earlier payments by the Williams Parties under this Agreement (the "Increased Settlement Proceeds") with the Increased Settlement Proceeds to be paid by the Williams Parties on or before December 31, 2020.

     iv.   As a condition to dismissal of the Complaint and Adversary Proceeding, the Williams Parties, and each of them, agree to execute and provide to the Trustee at the same time as the execution and return of this Agreement, a stipulated judgment in the amount of $100,000, less any payments received pursuant to paragraphs 3. i. – iii., above,  in favor of the Trustee and as against the Williams Parties, and each of them, a copy of which is attached as Exhibit "A" to the Settlement Agreement (the "Judgment").  The Trustee agrees to hold the Judgment in trust pending payment in full of the Settlement Proceeds and/or the Increased Settlement Proceeds. If the Settlement Proceeds and/or Increased Settlement Proceeds are paid to the Trustee in full when due, the Trustee will return the fully executed Judgment to the Williams Parties.  In the event of a default, the Trustee is authorized to immediately lodge the Judgment with the Bankruptcy Court having jurisdiction over the Adversary Proceeding and upon entry of the Judgment, record the Judgment against the Property.

4.      The Williams Parties, or their designee, shall purchase the Property from Trustee, and Trustee shall sell to Williams Parties, or their designee, the Property and all assets related

thereto including, without limitation, all permits, drawings, architectural renderings and other documents, records and rights related to the development of the Property free and clear of all liens, claims and interests, subject to the Bankruptcy Court approval and overbidding, and the following terms and conditions:

i.  The purchase of the Property by the Williams Parties, or their designee, shall be in the amount equal to all secured and unsecured debt repayment plus all administrative costs of the estate, with all payoff demands to be provided to the Trustee by January 15, 2021, and sale closing by February 15, 2021 or such other dates determined in the sole discretion of the Trustee, however, such shall not be binding on the Trustee or the estate on the basis that the Trustee shall only close such sale upon either satisfaction, payment or sufficient reserves to satisfy all claims of the Debtor's bankruptcy estate.

ii.  No later than January 8, 2021, the Williams Parties shall draft and enter into a formal sale agreement which will incorporate the material terms of the proposed sale for inclusion in a motion to approve the sale following review and approval of the payoff demands for all creditors secured by the Property.  In the event that the parties do not agree on a form of formal sale agreement, the Trustee has no obligation to sell the Property to the Williams Parties, or their designee, and may dispose of the Property in the sole discretion of the Trustee.

iii.  The closing of the sale transaction shall be not later than 90 days after the date of entry of order approving the sale.

iv.  The Williams Parties shall provide the Trustee with evidence reasonably satisfactory to the Trustee that the Property is adequately insured at which time the Trustee will terminate insurance procured by the Trustee.  Any policy procured by the Williams Parties shall name the Trustee as an additional insured.  Further, any policy procured by the Williams Parties cannot be terminated or modified absent at least seven (7) business days' prior notice to the Trustee.

v.  Pending the closing of the contemplated sale transaction or the denial of the such sale by the Bankruptcy Court, the Williams Parties shall be solely responsible for maintaining and preserving the Property at no expense to the Trustee and the Debtor's bankruptcy estate and shall cooperate with the Trustee's inquiries and efforts related thereto.

vi.  Upon the closing of the contemplated sale transaction, in addition any other orders of the Court, any and all claims asserted by any of the Williams Parties against the Debtor's bankruptcy estate, including, without limitation, any and all pre-petition or post-petition claims of

Williams, New Grand, and WBS (including POC 9 filed against Debtor's estate) (the "Insider Claims"), shall be deemed waived, forgiven, withdrawn and of no force or effect. For the avoidance of doubt, the amount of the Consideration to be paid pursuant to the contemplated sale shall exclude the amount of the Insider Claim, which shall be released as provided hereinabove.

14.     A true and correct copy of the Settlement Agreement is attached hereto as Exhibit 1 and is incorporated herein by reference.

## II.

## THE COMPROMISE SHOULD BE APPROVED

### A.     The Creditors Have Received Sufficient Notice Of The Settlement Agreement

Rule 9019 of the Federal Rules of Bankruptcy Procedure authorizes the Court to approve a settlement agreement following notice and an opportunity for a hearing. In the case at bar, notice of this Motion, which summarizes the relief sought by the Trustee, was served upon the Debtor, the Debtor's counsel, counsel for the Williams Parties, all creditors of the bankruptcy estate, the Office of the United States Trustee, as well as any parties who have requested special notice. Thus, the Motion may be determined upon notice of opportunity to request a hearing under Local Bankruptcy Rule 9013-1(o)(1).

### B.     The Bankruptcy Rules Allow The Court To Approve Compromise Of Controversy.

Rule 9019 states that "the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a). The "may" language of Rule 9019 indicates that the approval or disapproval of a proposed settlement lies within the sound discretion of the Court. For the reasons set forth below, the Court should approve the proposed Agreement.

### C.     Case Law Supports Approval Of The Proposed Settlement.

It is well-established that, as a matter of public policy, settlements are favored over continued litigation. See, e.g., In re A & C Properties, 784 F.2d 1377 (9th Cir. 1986); In re Blair, 538 F.2d 849, 851 (9th Cir. 1976); In re Heissenger Resources, Ltd., 67 B.R. 378, 382 (C.D. Ill. 1986).

The focus of inquiry in reviewing and approving compromises is whether the settlement is reasonable under the particular circumstances of the case. See In re General Store of Beverly

<u>Hills</u>, 11 B.R. 539 (9th Cir. BAP 1981).  Among the factors to be considered in determining whether a settlement is fair, equitable, and reasonable are the following:

        (a)   the probability of success in the litigation;

        (b)   any impediments to collection;

        (c)   the complexity, expense, inconvenience and delay of litigation; and

        (d)   the interest of creditors with deference to their reasonable opinions.

<u>See</u> <u>A & C Properties</u>, 784 F.2d at 1381.

From an analysis of the foregoing factors to the facts of this case, the Court should conclude that the terms of the Agreement are fair and equitable, and well within the range of reasonableness.

        a.    <u>The probability of success in the litigation</u>

While the Trustee believes that he may be successful in litigation against the Williams Parties, the Trustee would have to incur significant administrative fees and costs if this matter were to be prosecuted to trial, and would not obtain a commitment of the Williams Parties to purchase the Property.  Substantively, the Trustee's analysis provides that because the Sale Agreement was not approved by the Court, even though language in the Sale Agreement did not require Court approval for it to be binding on the Parties, prosecuting the Sale Agreement may be problematic. Thus, taking into account the foregoing legal issues and the inherent risks associated with litigation, the outcome of the Adversary Proceeding is uncertain and costly. Under this Agreement, the Trustee concludes the litigation of the Adversary Proceeding in exchange for a payment to the estate of $15,000 (subject to a stipulated judgment if not paid in the amount of $100,000), the withdrawal of POC 9 in the amount of $1,379,093.00 and obtains an agreement from the Williams Parties to purchase the Property for the amount of all claims against the Debtor's estate.   As such, the Trustee believes that this element favors approval of the Settlement Agreement.

        b.    <u>The difficulties in collection.</u>

Collection of a judgment in this matter is not relevant.   If the Trustee were to prevail, the amount sought in the Complaint would be replaced by another deposit of any other party

seeking to purchase the Property.  However, the Settlement Agreement enables the Trustee to receive $15,000 (subject to a stipulated judgment if not paid in the amount of $100,000), the withdrawal of POC 9 in the amount of $1,379,093.00 and obtains an agreement from the Williams Parties to purchase the Property for the amount of all claims against the Debtor's estate.  Conversely, in the event that the Agreement is not approved, the Trustee would be required to continue prosecuting the Adversary Proceeding which will cause the estate to incur substantial additional fees and further delays in administration of the estate. Therefore, the Trustee submits that this element also supports approval of the Settlement Agreement.

        c.      The complexity of the litigation involved and the expense, inconvenience and delay attendant to it.

Litigation of the Trustee's claims against the Williams Parties are not overly complex. As indicated above, the legal issue would relate to the validity of the Trustee to enforce the Sale Agreement.  In addition, if the Settlement Agreement is not approved, the litigation will be time-consuming and very expensive.  In light of the amount in dispute, the Agreement avoids the risk, expense and delay associated with litigation obtains a payment to the estate, withdrawal of POC 9 and a commitment of the Williams Parties to purchase the Property, which is of direct benefit to creditors of the Debtor's estate.  Therefore, this element also supports approval of the Settlement Agreement.

        d.      The interests of creditors.

As noted above, the Agreement will result in the estate's receipt of cash in the amount of $15,000.00 (subject to a stipulated judgment if not paid in the amount of $100,000), the withdrawal of POC 9 in the amount of $1,379,093.00 and obtains an agreement from the Williams Parties to purchase the Property for the amount of all claims against the Debtor's estate, without further litigation and the expense and delay associated therewith.  Given the inherent risks and expense associated with litigation, the legal issues related to the enforceability of the Sale Agreement, the Trustee believes that the benefit to the estate under the Settlement Agreement is significant, and the interests of creditors are best served by the approval of the Settlement Agreement.

Based on the foregoing, the Trustee respectfully submits that the Settlement Agreement is in the best interests of the estate, and requests that the Court approve the Settlement Agreement.

## III.

## <u>CONCLUSION</u>

Based upon the foregoing, the Trustee respectfully requests that the Court enter an order:

1.    Granting the Motion;

2.    Approving the Settlement Agreement;

3.    Authorizing and directing the Trustee and Williams Parties to take any and all steps necessary to effectuate the Settlement Agreement, which is attached hereto as <u>Exhibit 1</u>; and

4.    Granting such other and further relief as the Court deems just and proper.

DATED:  December 8, 2020

LEVENE, NEALE, BENDER,
YOO & BRILL L.L.P.


By:    /s/ Anthony A. Friedman
DAVID B. GOLUBCHIK
ANTHONY A. FRIEDMAN
Attorneys for Howard B. Grobstein, Chapter 7
Trustee for the estate of Windsor Holdings, LLC

15

## <u>DECLARATION OF HOWARD B. GROBSTEIN</u>

I, HOWARD B. GROBSTEIN, declare as follows:

1.      I am the duly-appointed and acting Chapter 7 Trustee for the bankruptcy estate of Windsor Holdings, LLC (the "<u>Debtor</u>").  The facts set forth herein are within my personal knowledge or I have gained knowledge of them from the regular business records that I maintain as a Chapter 7 Trustee. If called upon to do so, I could and would testify competently thereto. All capitalized terms not defined herein shall have the same meanings afforded to them as in the Motion to which this declaration is annexed.

2.      On or about April 30, 2018 (the "<u>Petition Date</u>"), the Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code, bearing case number 6:18-bk-13630-WJ (the "<u>Bankruptcy Case</u>") [Main Bankruptcy Case Docket No. 1].  On May 1, 2019, the Bankruptcy Court entered an order converting the Bankruptcy Case to one under Chapter 7 of the Bankruptcy Code [Main Bankruptcy Case Docket No. 64].  Thereafter, I was appointed Chapter 7 trustee of the Debtor's estate, a capacity in which I continue to serve.

3.      As set forth in the Debtor's Schedules of Assets and Liabilities [Main Bankruptcy Case Docket No. 1] (the "<u>Schedules</u>"), the Debtor has a "fee simple" interest in real property located at 401 Broad Street, Wichita Falls, Texas 76301 (the "<u>Property</u>").  The Trustee is informed that the Property is a two hundred and forty-one (241) room hotel which, prior to conversion to Chapter 7, the Debtor was planning on converting to senior apartment facility.

3.      The Property is encumbered by secured claims of third party creditors.  In addition, numerous unsecured creditors have asserted claims against the Debtor's estate, including, without limitation, Proof of Claim 9-1 ("<u>POC 9</u>") filed by Windsor Business Solutions, Ltd. ("<u>WBS</u>"), whereby WBS has asserted a general unsecured claim in the amount of $1,379,093.00.

4.      Larry Williams ("<u>Williams</u>") advised me that Williams, WBS and New Grand Senior Living, LLC ("<u>New Grand</u>" and collectively with Williams and WBS, the "<u>Williams Parties</u>"), through a related entity, desired to acquire the Property and related assets from the Debtor's estate.  The Williams Parties advised me that they completed any and all necessary due

16

diligence related to the purchase of the Property and related assets and procured financing required for the transaction. As a result, the Williams Parties advised me that they were ready and willing to enter into that certain *Binding Term Sheet For Sale Of Substnatially [sic] All Assets Of Estate* (the "<u>Agreement</u>") and proceed with the acquisition of the Property and related assets.

5.    The Agreement provided, *inter alia*, as follows:

a.  Pursuant to the terms of the Agreement, New Grand shall purchase from Trustee, and Trustee shall sell to New Grand (the "<u>Sale</u>"), the Property and all assets related thereto including, without limitation, all permits, drawings, architectural renderings and other documents, records and rights related to the development of the Property (the "<u>Property Assets</u>") free and clear of all liens, claims and interests as discussed in the Agreement.

b.  The consideration for the Sale shall be payment or satisfaction of any and all claims asserted against the Debtor's bankruptcy estate (the "<u>Consideration</u>").

c.  The Williams Parties shall transfer to the Trustee a deposit for the Sale in the amount of $100,000 (the "<u>Deposit</u>") pursuant to the following schedule:
    $75,000.00 not later than September 17, 2019; and
    $25,000.00 not later than October 8, 2019.

d.  Upon receipt of the Deposit, the Trustee, at his sole discretion, is authorized to use the Deposit funds for payment of all incurred but unpaid insurance obligations for the Chapter 7 period, including to pay for amounts that are currently due or become due for the Estate Policy, with the balance of the Deposit to be retained pending further order of the Court.

e.  Upon execution of this Term Sheet, Williams Parties shall provide Trustee with evidence reasonably satisfactory to the Trustee that the Property is adequately insured by a policy other than the Estate Policy (an "<u>Other Policy</u>") at which time the Trustee will terminate Estate Policy procured by the Trustee. Any Other Policy procured by Williams Parties shall name Trustee as an additional insured. Further, any Other Policy procured by Williams Parties cannot be terminated or modified absent at least seven (7) business days' prior notice to Trustee.

f.  Pending the closing of the Sale transaction or the denial of the Sale by the Court, Williams Parties shall be solely responsible for maintaining and

1
2

preserving the Property at no expense to the Trustee and the Debtor's bankruptcy estate and shall cooperate with the Trustee's inquiries and efforts related thereto.

3
4

6.      Thereafter, I contend that the Williams Parties defaulted under the Agreement. The Williams Parties dispute my contention.

5
6
7
8
9

7.      As a result, on October 18, 2019, I caused to be filed my *Complaint for: (1) Breach of Contract; (2) Specific Performance; (3) Turnover; and (4) Disallowance of Claims* (the "Complaint") [Adversary Proceeding Docket No. 1] against the Williams Parties, thereby commencing an adversary proceeding, bearing case number 6:19-ap-01146 WJ (the "Adversary Proceeding").

10
11

8.      On November 21, 2019, the Williams Parties filed their answer to the Complaint [Adversary Proceeding Docket No. 5].

12
13
14
15

9.      On June 26, 2020, in connection with the Trustee prosecution of the Complaint and Adversary Proceeding, I caused to propounded requests for admissions, requests for production of documents and special interrogatories to the Williams Parties, and each of them (the "Discovery").   The Williams Parties have not responded to the Discovery.

16
17
18
19

10.     The Williams Parties have further advised me that the Williams Parties have been and are currently providing security and other maintenance services related to the Property post-petition and after the appointment of the Trustee for which the Debtor's estate has not been charged fees or costs.

20
21
22
23
24
25

11.     The Williams Parties have advised me that the Williams Parties, through a related entity, seek to acquire the Property and related assets from the Debtor's estate.  In that capacity, the Williams Parties have advised me that they have completed any and all necessary due diligence related to the transaction and procured financing.  As a result, the Williams Parties have advised me that they are prepared to proceed with the acquisition of the Property, subject to overbidding.

26
27
28

14.     Following lengthy negotiations, the Parties herein have agreed to settle the disputes between them regarding the Property, POC 9, the Complaint and Adversary Proceeding

18

upon the terms and subject to the conditions set forth in this Settlement Agreement and Release (the "Settlement Agreement"). A true and correct copy of the Settlement Agreement is attached hereto as Exhibit 1 and incorporated herein by reference. The Agreement provides, inter alia, that:

a.    Upon Bankruptcy Court approval of this Agreement, WBS shall file in the Bankruptcy Case a withdrawal of POC 9.  In the event that WBS fails to file a withdrawal of POC 9 in the Bankruptcy Case, POC 9 shall be deemed withdrawn as against the Debtor's estate with prejudice.

b.    The Williams Parties, and each of them, shall fully respond and produce documents, as required, without objection, to the Discovery on or before December 31, 2020, however, should the Williams Parties pay the Settlement Proceeds (as that term is defined in paragraph 3, below) consistent with terms set forth in paragraphs 3. i. and 3. ii., the Williams Parties requirement to respond to the Discovery shall terminate.  For the sake of clarity, if the Settlement Proceeds are not paid timely and the Increased Settlement Proceeds (as that term is defined in paragraph 3. iii., below) amount becomes operative, the Williams Parties, and each of them, will be required to fully respond and produce documents, as required, without objection, to the Discovery on or before December 31, 2020.

c.    In exchange for dismissal of the Complaint and Adversary Proceeding, the Williams Parties shall pay $15,000 (the "Settlement Proceeds") to the Trustee.  The Settlement Proceeds shall be paid as follows:

i.    $10,000 to the Trustee on or before December 7, 2020.

ii.    $5,000 to the Trustee on or before December 14, 2020.

iii.    In the event that either payment set forth in paragraphs 1.4.1 and 1.4.2, above, are not timely paid in full, the Settlement Proceeds shall be increased to $30,000, less any amounts received for earlier payments by the Williams Parties under this Agreement (the "Increased Settlement Proceeds") with the Increased Settlement Proceeds to be paid by the Williams Parties on or before December 31, 2020.

iv.    As a condition to dismissal of the Complaint and Adversary Proceeding, the Williams Parties, and each of them, agree to execute

and provide to the Trustee at the same time as the execution and return of this Agreement, a stipulated judgment in the amount of $100,000, less any payments received pursuant to paragraphs 3. i. – iii., above,  in favor of the Trustee and as against the Williams Parties, and each of them, a copy of which is attached as Exhibit "A" to the Settlement Agreement (the "<u>Judgment</u>").  The Trustee agrees to hold the Judgment in trust pending payment in full of the Settlement Proceeds and/or the Increased Settlement Proceeds. If the Settlement Proceeds and/or Increased Settlement Proceeds are paid to the Trustee in full when due, the Trustee will return the fully executed Judgment to the Williams Parties.  In the event of a default, the Trustee is authorized to immediately lodge the Judgment with the Bankruptcy Court having jurisdiction over the Adversary Proceeding and upon entry of the Judgment, record the Judgment against the Property.

d. The Williams Parties, or their designee, shall purchase the Property from Trustee, and Trustee shall sell to Williams Parties, or their designee, the Property and all assets related thereto including, without limitation, all permits, drawings, architectural renderings and other documents, records and rights related to the development of the Property free and clear of all liens, claims and interests, subject to the Bankruptcy Court approval and overbidding, and the following terms and conditions:

i. The purchase of the Property by the Williams Parties, or their designee, shall be in the amount equal to all secured and unsecured debt repayment plus all administrative costs of the estate, with all payoff demands to be provided to the Trustee by January 15, 2021, and sale closing by February 15, 2021 or such other dates determined in the sole discretion of the Trustee, however, such shall not be binding on the Trustee or the estate on the basis that the Trustee shall only close such sale upon either satisfaction, payment or sufficient reserves to satisfy all claims of the Debtor's bankruptcy estate.

ii. No later than January 8, 2021, the Williams Parties shall draft and enter into a formal sale agreement which will incorporate the material terms of the proposed sale for inclusion in a motion to approve the sale following review and approval of the payoff demands for all creditors secured by the Property.   In the event that the parties do not agree on a form of formal sale agreement, the Trustee has no obligation to sell the Property to the Williams Parties, or their designee, and may dispose of the Property in the sole discretion of the Trustee.

  iii. The closing of the sale transaction shall be not later than 90 days after the date of entry of order approving the sale.

  iv. The Williams Parties shall provide the Trustee with evidence reasonably satisfactory to the Trustee that the Property is adequately insured at which time the Trustee will terminate insurance procured by the Trustee.  Any policy procured by the Williams Parties shall name the Trustee as an additional insured.  Further, any policy procured by the Williams Parties cannot be terminated or modified absent at least seven (7) business days' prior notice to the Trustee.

  v. Pending the closing of the contemplated sale transaction or the denial of the such sale by the Bankruptcy Court, the Williams Parties shall be solely responsible for maintaining and preserving the Property at no expense to the Trustee and the Debtor's bankruptcy estate and shall cooperate with the Trustee's inquiries and efforts related thereto.

  vi. Upon the closing of the contemplated sale transaction, in addition any other orders of the Court, any and all claims asserted by any of the Williams Parties against the Debtor's bankruptcy estate, including, without limitation, any and all pre-petition or post-petition claims of Williams, New Grand, and WBS (including POC 9 filed against Debtor's estate) (the "Insider Claims"), shall be deemed waived, forgiven, withdrawn and of no force or effect.  For the avoidance of doubt, the amount of the Consideration to be paid pursuant to the contemplated sale shall exclude the amount of the Insider Claim, which shall be released as provided hereinabove.

  15. The Settlement Agreement will result in the estate's receipt of cash in the amount of $15,000.00 (subject to a stipulated judgment if not paid in the amount of $100,000), the withdrawal of POC 9 in the amount of $1,379,093.00 and obtains an agreement from the Williams Parties to purchase the Property for the amount of all claims against the Debtor's estate, without further litigation and the expense and delay associated therewith.  Given the inherent risks and expense associated with litigation, the legal issues related to the enforceability of the Sale Agreement, in exercise of my business judgment, I believe that the benefit to the estate under the Settlement Agreement is significant, that the Settlement Agreement is fair and reasonable and the interests of creditors are best served by the approval of the Settlement Agreement.

16.     Based on the forgoing, I request that the Court approve the Motion and the terms and conditions of the Settlement Agreement.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this declaration was executed on December 8, 2020, at Woodland Hills, California.

HOWARD B. GROBSTEIN
Chapter 7 Trustee

# EXHIBIT "1"

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release (the "Agreement") is made and entered into as of December 7, 2020, by Howard B. Grobstein, Chapter 7 Trustee (the "Trustee") for the bankruptcy estate of Windsor Holdings, LLC (the "Debtor"), on the one hand, and Larry Williams ("Williams"), New Grand Senior Living, LLC ("New Grand") and Windsor Business Solutions, Ltd. ("WBS" and collectively with Williams and New Grand, the "Williams Parties"), on the other hand.   Collectively, the Trustee and the Williams Parties may be referred to as the "Parties".  This Agreement is made with reference to the following facts:

## RECITALS

A.     On or about April 30, 2018 (the "Petition Date"), the Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code, bearing case number 6:18-bk-13630-WJ (the "Bankruptcy Case") [Main Bankruptcy Case Docket No. 1].

B.     On May 1, 2019, the Bankruptcy Court entered an order converting the Bankruptcy Case to one under Chapter 7 of the Bankruptcy Code [Main Bankruptcy Case Docket No. 64].   At or about that time, the Trustee was appointed Chapter 7 Trustee of Debtor's bankruptcy estate, a capacity in which the Trustee continues to serve.

C.     As set forth in the Debtor's Schedules of Assets and Liabilities [Main Bankruptcy Case Docket No. 1] (the "Schedules"), the Debtor has a "fee simple" interest in real property located at 401 Broad Street, Wichita Falls, Texas 76301 (the "Property").   The Trustee is informed that the Property is a two hundred and forty-one (241) room hotel which, prior to conversion to Chapter 7, the Debtor was planning on converting to senior apartment facility.

D.     The Property is encumbered by secured claims of third party creditors.   In addition, numerous unsecured creditors have asserted claims against the Debtor's estate, including, without limitation, Proof of Claim 9-1 ("POC 9") filed by WBS, whereby WBS has asserted a general unsecured claim in the amount of $1,379,093.00.

E.     Williams advised the Trustee that the Williams Parties, through a related entity, desired to acquire the Property and related assets from the Debtor's estate.  The Williams Parties advised the Trustee that they completed any and all necessary due diligence related to the purchase of the Property and related assets and procured financing required for the transaction.  As a result, the Williams Parties advised the Trustee that they were ready and willing to enter into that certain *Binding Term Sheet For Sale Of Substnatially [sic] All Assets Of Estate* (the "Agreement") and proceed with the acquisition of the Property and related assets.

/ / /

F.    The Agreement provided, *inter alia*, as follows:

1. Pursuant to the terms of the Agreement, New Grand shall purchase from Trustee, and Trustee shall sell to New Grand (the "Sale"), the Property and all assets related thereto including, without limitation, all permits, drawings, architectural renderings and other documents, records and rights related to the development of the Property (the "Property Assets") free and clear of all liens, claims and interests as discussed in the Agreement.

2. The consideration for the Sale shall be payment or satisfaction of any and all claims asserted against the Debtor's bankruptcy estate (the "Consideration").

3. The Williams Parties shall transfer to the Trustee a deposit for the Sale in the amount of $100,000 (the "Deposit") pursuant to the following schedule:
   i.    $75,000.00 not later than September 17, 2019; and
   ii.   $25,000.00 not later than October 8, 2019.

4. Upon receipt of the Deposit, the Trustee, at his sole discretion, is authorized to use the Deposit funds for payment of all incurred but unpaid insurance obligations for the Chapter 7 period, including to pay for amounts that are currently due or become due for the Estate Policy, with the balance of the Deposit to be retained pending further order of the Court.

5. Upon execution of this Term Sheet, Williams Parties shall provide Trustee with evidence reasonably satisfactory to the Trustee that the Property is adequately insured by a policy other than the Estate Policy (an "Other Policy") at which time the Trustee will terminate Estate Policy procured by the Trustee. Any Other Policy procured by Williams Parties shall name Trustee as an additional insured. Further, any Other Policy procured by Williams Parties cannot be terminated or modified absent at least seven (7) business days' prior notice to Trustee.

6. Pending the closing of the Sale transaction or the denial of the Sale by the Court, Williams Parties shall be solely responsible for maintaining and preserving the Property at no expense to the Trustee and the Debtor's bankruptcy estate and shall cooperate with the Trustee's inquiries and efforts related thereto.

G.    Thereafter, the Trustee contends that the Williams Parties defaulted under the Agreement. The Williams Parties dispute the Trustee's contention.

- 2 –

H.      As a result, on October 18, 2019, the Trustee filed his *Complaint for: (1) Breach of Contract; (2) Specific Performance; (3) Turnover; and (4) Disallowance of Claims* (the "Complaint") [Adversary Proceeding Docket No. 1] against the Williams Parties, thereby commencing an adversary proceeding, bearing case number 6:19-ap-01146 WJ (the "Adversary Proceeding").

I.      On November 21, 2019, the Williams Parties filed their answer to the Complaint [Adversary Proceeding Docket No. 5].

J.      On June 26, 2020, in connection with the Trustee prosecution of the Complaint and Adversary Proceeding, the Trustee propounded requests for admissions, requests for production of documents and special interrogatories to the Williams Parties, and each of them (the "Discovery").   The Williams Parties have not responded to the Discovery.

K.      The Williams Parties have further advised the Trustee that the Williams Parties have been and are currently providing security and other maintenance services related to the Property post-petition and after the appointment of the Trustee for which the Debtor's estate has not been charged fees or costs.

L.      The Williams Parties have advised the Trustee that the Williams Parties, through a related entity, seek to acquire the Property and related assets from the Debtor's estate. In that capacity, the Williams Parties have advised the Trustee that they have completed any and all necessary due diligence related to the transaction and procured financing.  As a result, the Williams Parties have advised the Trustee that they are prepared to proceed with the acquisition of the Property, subject to overbidding.

M.      Following lengthy negotiations, the Parties herein have agreed to settle the disputes between them regarding the Property, POC 9, the Complaint and Adversary Proceeding upon the terms and subject to the conditions set forth in this Agreement.

NOW THEREFORE, in consideration of the foregoing facts and the mutual covenants, conditions, promises and agreements contained herein, and for other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, the Parties agree as follows:

## AGREEMENT

### 1.      Terms of Settlement.

1.1      This Agreement is subject to the approval of the United States Bankruptcy Court for the Central District of California, Riverside Division, having jurisdiction over the Trustee and shall not be effective until approved.  In the event that the Bankruptcy Court does NOT approve this Agreement, it is null and void and of no force or effect.

1.2    Upon Bankruptcy Court approval of this Agreement, WBS shall file in the Bankruptcy Case a withdrawal of POC 9.   In the event that WBS fails to file a withdrawal of POC 9 in the Bankruptcy Case, POC 9 shall be deemed withdrawn as against the Debtor's estate with prejudice.

1.3    The Williams Parties, and each of them, shall fully respond and produce documents, as required, without objection, to the Discovery on or before December 31, 2020, however, should the Williams Parties pay the Settlement Proceeds (as that term is defined in paragraph 1.4, below) consistent with terms set forth in paragraphs 1.4.1 and 1.4.2., the Williams Parties requirement to respond to the Discovery shall terminate.   For the sake of clarity, if the Settlement Proceeds are not paid timely and the Increased Settlement Proceeds (as that term is defined in paragraph 1.4.3, below) amount becomes operative, the Williams Parties, and each of them, will be required to fully respond and produce documents, as required, without objection, to the Discovery on or before December 31, 2020.

1.4    In exchange for dismissal of the Complaint and Adversary Proceeding, the Williams Parties shall pay $15,000 (the "Settlement Proceeds") to the Trustee.   The Settlement Proceeds shall be paid as follows:

    1.4.1    $10,000 to the Trustee on or before December 7, 2020.

    1.4.2    $5,000 to the Trustee on or before December 14, 2020.

    1.4.3    In the event that either payment set forth in paragraphs 1.4.1 and 1.4.2, above, are not timely paid in full, the Settlement Proceeds shall be increased to $30,000, less any amounts received for earlier payments by the Williams Parties under this Agreement (the "Increased Settlement Proceeds") with the Increased Settlement Proceeds to be paid by the Williams Parties on or before December 31, 2020.

    1.4.4    As a condition to dismissal of the Complaint and Adversary Proceeding, the Williams Parties, and each of them, agree to execute and provide to the Trustee at the same time as the execution and return of this Agreement, a stipulated judgment in the

- 4 –

amount of $100,000, less any payments received pursuant to paragraphs 1.4.1, 1.4.2 and 1.4.3, above, in favor of the Trustee and as against the Williams Parties, and each of them, a copy of which is attached hereto as **Exhibit "A"** (the "Judgment"). The Trustee agrees to hold the Judgment in trust pending payment in full of the Settlement Proceeds and/or the Increased Settlement Proceeds. If the Settlement Proceeds and/or Increased Settlement Proceeds are paid to the Trustee in full when due, the Trustee will return the fully executed Judgment to the Williams Parties. In the event of a default, the Trustee is authorized to immediately lodge the Judgment with the Bankruptcy Court having jurisdiction over the Adversary Proceeding and upon entry of the Judgment, record the Judgment against the Property.

    1.5    The Williams Parties, or their designee, shall purchase the Property from Trustee, and Trustee shall sell to Williams Parties, or their designee, the Property and all assets related thereto including, without limitation, all permits, drawings, architectural renderings and other documents, records and rights related to the development of the Property free and clear of all liens, claims and interests, subject to the Bankruptcy Court approval and overbidding, and the following terms and conditions:

    1.5.1    The purchase of the Property by the Williams Parties, or their designee, shall be in the amount equal to all secured and unsecured debt repayment plus all administrative costs of the estate, with all payoff demands to be provided to the Trustee by January 15, 2021, and sale closing by February 15, 2021 or such other dates determined in the sole discretion of the Trustee, however, such shall not be binding on the Trustee or the estate on the basis that the Trustee shall only close such sale upon either satisfaction, payment or sufficient reserves to satisfy all claims of the Debtor's bankruptcy estate.

/ / /

/ / /

/ / /

1.5.2  No later than January 8, 2021, the Williams Parties shall draft and enter into a formal sale agreement which will incorporate the material terms of the proposed sale for inclusion in a motion to approve the sale following review and approval of the payoff demands for all creditors secured by the Property. In the event that the parties do not agree on a form of formal sale agreement, the Trustee has no obligation to sell the Property to the Williams Parties, or their designee, and may dispose of the Property in the sole discretion of the Trustee.

1.5.3  The closing of the sale transaction shall be not later than 90 days after the date of entry of order approving the sale.

1.5.4  The Williams Parties shall provide the Trustee with evidence reasonably satisfactory to the Trustee that the Property is adequately insured at which time the Trustee will terminate insurance procured by the Trustee. Any policy procured by the Williams Parties shall name the Trustee as an additional insured. Further, any policy procured by the Williams Parties cannot be terminated or modified absent at least seven (7) business days' prior notice to the Trustee.

1.5.5  Pending the closing of the contemplated sale transaction or the denial of the such sale by the Bankruptcy Court, the Williams Parties shall be solely responsible for maintaining and preserving the Property at no expense to the Trustee and the Debtor's bankruptcy estate and shall cooperate with the Trustee's inquiries and efforts related thereto.

1.5.6  Upon the closing of the contemplated sale transaction, in addition any other orders of the Court, any and all claims asserted by any of the Williams Parties against the Debtor's bankruptcy estate, including, without limitation, any and all pre-petition or post-petition claims of Williams, New Grand, and WBS (including POC 9 filed against Debtor's estate) (the "Insider Claims"), shall be

deemed waived, forgiven, withdrawn and of no force or effect. For the avoidance of doubt, the amount of the Consideration to be paid pursuant to the contemplated sale shall exclude the amount of the Insider Claim, which shall be released as provided hereinabove.

**2.    Release Provisions.**

    **2.1    Release**:

    a.    Except for the continuing obligations in this Agreement and as otherwise set forth in this Agreement, the Trustee agrees to and does release and waive all claims and causes of action the estate now has, whether known or unknown, against the Williams Parties, and each of them, arising from and related to the Property, POC 9, the Complaint and Adversary Proceeding (the "Trustee's Claims").

    b.    Except for the continuing obligations in this Agreement and as otherwise set forth in this Agreement, the Williams Parties, and each of them, agree to and do release and waive all claims and causes of action they now have, whether known or unknown, against the Trustee, Trustee's counsel and the Debtor's estate arising from and relating to the Property, POC 9, the Complaint and Adversary Proceeding (the "Williams Parties Claims") (Collectively, the Trustee's Claims and Williams Parties Claims will be referred to as the "Claims").

**3.    Warranties and Representations.**

    **3.1    Authority to Execute Agreement**: The Trustee and the Williams Parties warrant and represent that the individual persons executing this Agreement are duly authorized to execute this Agreement on behalf of the respective Parties and in their respective capacities as indicated below, provided however that the Trustee's execution of this Agreement is specifically subject to the approval of the Bankruptcy Court as provided for herein.

    **3.2    Legal Representations**: The Trustee and the Williams Parties represent and agree that: (a) each of the Parties has obtained and/or had the opportunity to obtain independent legal advice with respect to this Agreement, the subject matter of this Agreement, the facts referred to above, and any rights or asserted rights arising

– 7 –

therefrom; (b) each of the Parties has full knowledge of any and all rights which they may have in connection with the Claims, the subject matter of the Claims, and the facts relating to the Claims; (c) none of the Parties are relying upon and have not relied upon any representation or statement made by any of the Parties or their counsel, with regard to the matters herein compromised or with regard to any rights or asserted rights in connection therewith; and (d) each of the parties hereby assumes the risk of any mistakes of fact in connection with the true facts involved in this Agreement or with regard to any facts which are now unknown to it relating thereto.

3.3     **Assignment**:  Each of the Parties hereby warrants, represents and agrees that they are the sole and lawful owner of all right, title and interest in and to all of the respective Claims which are referred to in the release set forth above and that they have not heretofore voluntarily, by operation of law or otherwise, assigned or transferred or purported to assign or transfer to any person whomsoever any such Claims, or any part or portion thereof.  Each of the Parties agrees to indemnify and hold each of the other parties harmless from any claim, demand, damage, liability, action or cause of action based on or connected with or arising in any manner out of any such assignment or transfer.

3.4     **Voluntary Agreement**:  Each of the Parties warrants, represents and agrees that, prior to executing and delivering this Agreement, each party has read this Agreement, has conferred with counsel of its choice regarding the terms and conditions set forth in this Agreement, and the legal significance of the terms and conditions contained in this Agreement, and is fully aware of the contents of this Agreement and its legal effect.  Each of the Parties further warrants that it has executed and delivered this Agreement voluntarily and without any duress or undue influence having been exerted upon it by any person whomsoever.

4.     **Beneficiaries and Persons Bound.**

4.1     **Limitation**:  This Agreement, including but not limited to the release set forth above, is not for the benefit of any person who is not a party signatory to this Agreement or who is not specifically named as a beneficiary in this Agreement, and the provisions of this Agreement, including without limitation, the mutual general release set forth above; is not intended to affect the rights of any party or non-party against any person or entity who is not a party signatory to this Agreement or who is not specifically named as a beneficiary in this Agreement.

4.2     **Beneficiaries**:  Subject to paragraph 4.1, above, this Agreement, including, but not limited to the release set forth above, shall inure to the benefit of and be binding upon each of the Parties, and each of their respective predecessors, successors, assigns, assignors, heirs, legatees, devisees, executors, administrators, estates, receivers and trustees, officers, directors, shareholders, employees, servants, agents, partners, insurers, representatives, attorneys, legal representatives, parent corporations, subsidiary

- 8 -

corporations and affiliated companies, and all persons acting by, through, under or in concert with them or any of them.

## 5. Miscellaneous.

    **5.1** **Compromise**: Each of the Parties acknowledges that in executing this Agreement, paying or accepting funds, making or accepting delivery of funds or documents, or acting pursuant to this Agreement, none of the Parties is admitting any liability whatsoever to any of the other Parties or to any other person or entity, and the Parties further acknowledge that each of the Parties has maintained and presently does maintain that they have no liability whatsoever to any of the other Parties or any other person or entity. The Parties further acknowledge that this Agreement constitutes a compromise of disputed claims and each of the Parties assumes the risk of any damages, injuries, disabilities, or errors which may now be latent or unexpected and which may hereafter appear, develop or occur as a result of, or in relation to the claims raised or the causes of action brought in the respective lawsuits.

    **5.2** **Further Assurance**: In addition to the documents and instruments to be delivered as herein provided, each of the Parties hereto shall, from time to time, at the request of the other party, execute and deliver to the other party, such documents or other instruments of transfer, conveyance and assignment; shall provide such information and/or documents; and/or shall take such other action as may be reasonably required to carry out the terms of this Agreement. The parties hereto agree to do, execute, acknowledge and deliver (or cause to be done, executed, acknowledged and delivered) each and every such further act, covenant, assurance, instrument or document, and take any other actions, as may be reasonably necessary to further the purposes of or to carry out the intent and purpose of this Agreement.

    **5.3** **Professional Fees**: With respect to any suit or proceeding involving the enforcement of this Agreement, including, but not limited to, instituting any action or proceeding to enforce any provisions of this Agreement, to prevent a breach of this Agreement, for damages by reason of any alleged breach of any provisions of this Agreement, or for a declaration of a party's rights or obligations under this Agreement, the ultimate prevailing party shall be entitled to recover from the losing party or parties, in addition to such other relief as may be granted, its reasonable attorneys' fees (other than the attorneys' fees and costs to prepare this Agreement and seek Bankruptcy Court approval of this Agreement).

    **5.4** **Breach of the Agreement**: It is expressly understood and agreed by each of the Parties that nothing provided for in this Agreement is intended to nor does it release any claims arising out of breach of this Agreement, or any representations contained herein or made in connection herewith. All representations, warranties and covenants herein shall survive the execution of this Agreement.

**5.5** __Governing Law__:  This Agreement and the rights and obligations of the parties hereunder shall be construed, interpreted and enforced in accordance with the laws of the State of California.

**5.6** __Counterparts__:  This Agreement may be executed in multiple counterpart copies, each of which shall be deemed an original, but all of which together shall constitute one agreement.  The Agreement shall become effective when each party has obtained a fully executed counterpart original of this Agreement and the other agreements referred to herein.

**5.7** __Severability__:  In the event that any covenant, condition or other provision contained in this Agreement is held to be invalid, void or illegal by any court of competent jurisdiction, the same shall be deemed severable from the remainder of this Agreement and shall in no way affect, impair or invalidate any other covenant, condition or other provision contained herein, so long as such severance does not materially affect the consideration given or received herein or the general intent hereof.  If such condition, covenant or other provision shall be deemed invalid due to its scope or breadth, such covenant, condition or other provision shall be deemed valid to the extent that the scope or breadth is permitted by law.

**5.8** __Waiver__:  No breach of any provision herein can be waived unless in writing.  Waiver of any one breach of any provision hereof shall not be deemed to be waiver of any other breach of the same or the other provision hereof.

**5.9** __Integration__:  This Agreement sets forth the entire agreement between the parties with regard to the subject matter hereof and no change, modification, amendment, termination or discharge of this Agreement shall be binding unless made in writing and executed by each of the parties.  All agreements, covenants, representations and warranties, express or implied, oral and written, of the parties with regard to the subject matter hereof, are contained in this Agreement and the documents referred to herein or implementing the provisions hereof.   No other agreements, covenants, representations or warranties, express or implied, oral or written, have been made by any party to another party with respect to the subject matter of this Agreement.  All prior and contemporaneous conversations, negotiations, possible and alleged agreements and representations, covenants and warranties with respect to the subject matter hereof are waived, merged herein, and superseded hereby and thereby.   This is an integrated agreement.

**5.10** __Notices__:

    i.   To the Trustee:  Copies of all notices and the delivery of any payments contemplated hereunder to the Trustee shall be made by delivering same to the Trustee's counsel, Anthony A. Friedman, Esq., Levene, Neale, Bender, Yoo & Brill L.L.P.,

- 10 –

10250 Constellation Blvd., Suite 1700, Los Angeles, California 90067.

ii.  <u>To the Williams Parties:</u>  Copies of all notices contemplated hereunder to the Williams Parties shall be made by delivery same to the Williams Parties c/o Thomas Corcovelos, Corcovelos Law Group, 1001 Sixth Street, Suite 150 Manhattan Beach, California 90266-6750.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement to be effective as of the date set forth above.

Dated: December ___, 2020          HOWARD B. GROBSTEIN, Chapter 7 Trustee

By:_____
          HOWARD B. GROBSTEIN
          Chapter 7 Trustee

Dated: December ___, 2020          HOWARD B. GROBSTEIN, Chapter 7 Trustee

By:_____
          DAVID B. GOLUBCHIK
          ANTHONY A. FRIEDMAN
          LEVENE, NEALE, BENDER,
                YOO & BRILL L.L.P.
     Attorneys for Howard B. Grobstein,
     Chapter 7 Trustee

Dated: December ___, 2020          WILLIAMS PARTIES

By:_____
          THOMAS CORCOVELOS
          Corcovelos Law Group
          Attorneys for the Williams Parties

[SIGNATURES CONTINUED ON NEXT PAGE]

– 11 –

10250 Constellation Blvd., Suite 1700, Los Angeles, California 90067.

    ii.   <u>To the Williams Parties</u>:  Copies of all notices contemplated hereunder to the Williams Parties shall be made by delivery same to the Williams Parties c/o Thomas Corcovelos, Corcovelos Law Group, 1001 Sixth Street, Suite 150 Manhattan Beach, California 90266-6750.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement to be effective as of the date set forth above.

Dated: December \_\_\_, 2020      HOWARD B. GROBSTEIN, Chapter 7 Trustee


By:_____
        HOWARD B. GROBSTEIN
        Chapter 7 Trustee


Dated: December \_\_\_, 2020      HOWARD B. GROBSTEIN, Chapter 7 Trustee


By:_____
        DAVID B. GOLUBCHIK
        ANTHONY A. FRIEDMAN
        LEVENE, NEALE, BENDER,
           YOO & BRILL L.L.P.
Attorneys for Howard B. Grobstein,
Chapter 7 Trustee


Dated: December _7_, 2020      WILLIAMS PARTIES


By:_____
        THOMAS CORCOVELOS
        Corcovelos Law Group
        Attorneys for the Williams Parties


[SIGNATURES CONTINUED ON NEXT PAGE]


- 11 -

Dated: December **1**, 2020          LARRY WILLIAMS

By: _____
          LARRY WILLIAMS


Dated: December **1**, 2020          NEW GRAND SENIOR LIVING, LLC

By: _____
          LARRY WILLIAMS
          Its: Managing Member


Dated: December **1**, 2020          WINDSOR BUSINESS SOLUTIONS, LTD.

By: _____
          LARRY WILLIAMS
          Its: Chairman

# EXHIBIT "A"

DAVID B. GOLUBCHIK (SBN 185520)
dbg@lnbyb.com
ANTHONY A. FRIEDMAN (SBN 201955)
aaf@lnbyb.com
LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.
10250 Constellation Boulevard, Suite 1700
Los Angeles, CA 90067
Telephone: (310) 229-1234
Facsimile: (310) 229-1244

Attorneys for Plaintiff, Howard B. Grobstein, Chapter 7 Trustee

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## RIVERSIDE DIVISION

| | |
|---|---|
| In re | Case No. 6:18-bk-13630 WJ |
| **WINDSOR HOLDINGS, LLC,** | Chapter 7 |
| **Debtor.** | |
| **HOWARD B. GROBSTEIN,** <br> **Chapter 7 Trustee,** | Adv. No. 6:19-ap-01146-WJ |
| **Plaintiff,** | **STIPULATED JUDGMENT** |
| v. | **[No Hearing Required]** |
| **LARRY WILLIAMS, NEW GRAND** <br> **SENIOR LIVING, LLC, and WINDSOR** <br> **BUSINESS SOLUTIONS, LTD.,** | |
| **Defendants.** | |

1

On October 18, 2019, Plaintiff Howard B. Grobstein, Chapter 7 Trustee (the "Plaintiff" or "Trustee") for the bankruptcy estate of *In re Windsor Holdings, LLC* (the "Debtor") filed his *Complaint for: (1) Breach of Contract; (2) Specific Performance; (3) Turnover; and (4) Disallowance of Claims* (the "Complaint") [Adversary Proceeding Docket No. 1] against Larry Williams ("Williams"), New Grand Senior Living, LLC ("New Grand") and Windsor Business Solutions, Ltd. ("WBS" and collectively with Williams and New Grand, the "Williams Parties"), thereby commencing this Adversary Proceeding, bearing case number 6:19-ap-01146 WJ.

On October 22, 2019, the Court issued a summons (the "Summons") in connection with the Complaint [Adversary Proceeding Docket No. 2].

On October 23, 2019, the Williams Parties were served with the Summons and Complaint, among other documents [Docket No. 4].

The Complaint contends, among other things, that:

a.  On April 30, 2018 (the "Petition Date"), the Debtor commenced this case by filing a Voluntary Petition under Chapter 11 of the Bankruptcy Code.

b.  After the Petition Date, the Debtor's Chapter 11 bankruptcy case was converted to a Chapter 7 bankruptcy case.  On or about the same time of the conversion of the Debtor's Chapter 11 bankruptcy case to a Chapter 7 bankruptcy case, the Trustee was appointed as the Chapter 7 Trustee of the Debtor's bankruptcy estate.

c.  As set forth in the Debtor's Schedules of Assets and Liabilities [Main Bankruptcy Case Docket No. 1] (the "Schedules"), the Debtor has a "fee simple" interest in real property located at 401 Broad Street, Wichita Falls, Texas 76301 (the "Property").  The Trustee is informed that the Property is a two hundred and forty-one (241) room hotel which, prior to conversion to Chapter 7, the Debtor was planning on converting to senior apartment facility.

2

d.   Williams advised the Trustee that the Williams Parties, through a related entity, desired to acquire the Property and related assets from the Debtor's estate. The Williams Parties advised the Trustee that they completed any and all necessary due diligence related to the purchase of the Property and related assets and procured financing required for the transaction. As a result, the Williams Parties advised the Trustee that they were ready and willing to enter into that certain *Binding Term Sheet For Sale Of Substnatially [sic] All Assets Of Estate* (the "Agreement") and proceed with the acquisition of the Property and related assets.

e.   Among other things, the Agreement provided that the consideration for the sale of the Property shall be payment or satisfaction of any and all claims asserted against the Debtor's bankruptcy estate and that the Williams Parties shall provide the Trustee with an initial deposit of $100,000.

f.   After entering in to the Agreement, the Williams Parties defaulted on the Agreement and failed to pay the initial deposit of $100,000.

On November 21, 2019, the Williams Parties filed their answer to the Complaint [Adversary Proceeding Docket No. 5].

The Williams Parties have entered into a settlement agreement with the Trustee to resolve the Complaint and Adversary Proceeding. However, the Williams Parties have defaulted under the terms of the settlement agreement and agree to enter into this Stipulated Judgment for purposes of providing the Trustee with the relief sought by way of the Complaint.

The Williams Parties and the Trustee, having consented to the entry of this Stipulated Judgment against Larry Williams, New Grand Senior Living, LLC and Windsor Business Solutions, Ltd. (see Consent of the Parties, *infra*) pursuant to the terms of this Stipulated Judgment, now therefore, without trial or adjudication of any issue of fact or law herein, and upon

the consent of the parties hereto, and the Court having been advised of, and having given due

deliberation to, the matter;

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that:

1.      Judgment in the amount of $100,000.00 is hereby entered in favor of Plaintiff

Howard B. Grobstein, Chapter 7 Trustee for the bankruptcy estate of Windsor Holdings, LLC and

against Larry Williams, New Grand Senior Living, LLC and Windsor Business Solutions, Ltd.,

jointly and severally, in the above-captioned adversary proceeding, with post-judgment interest to

accrue at the legal rate pursuant to 28 U.S.C. § 1961.

**IT IS SO ORDERED.**

Dated: _____        _____
                                           WAYNE JOHNSON
                                           United States Bankruptcy Judge

*[Consent Of Defendants On Following Page]*

## CONSENT OF DEFENDANTS

DEFENDANTS HEREIN, LARRY WILLIAMS, NEW GRAND SENIOR LIVING, LLC AND WINDSOR BUSINESS SOLUTIONS, LTD., HAVING READ, UNDERSTOOD AND APPROVED THE TERMS OF THE FOREGOING STIPULATED JUDGMENT DOES HEREBY CONSENT TO ENTRY OF THE FOREGOING JUDGMENT.

DATED: December 7, 2020

LARRY WILLIAMS

DATED: December 7, 2020

NEW GRAND SENIOR LIVING, LLC

By: 

Print Name:   LARRY WILLIAMS

Its:   Managing Member

DATED: December 7, 2020

WINDSOR BUSINESS SOLUTIONS, LTD.

By: 

Print Name:   LARRY WILLIAMS

Its:   Chairman

1

# PROOF OF SERVICE OF DOCUMENT

2

3

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is 10250 Constellation Boulevard, Suite 1700, Los Angeles, CA 90067.

4

5

6

A true and correct copy of the foregoing document entitled **CHAPTER 7 TRUSTEE'S MOTION TO APPROVE COMPROMISE OF CONTROVERSY WITH LARRY WILLIAMS, NEW GRAND SENIOR LIVING, LLC AND WINDSOR BUSINESS SOLUTIONS, LTD.; MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATION IN SUPPORT THEREOF** will be served or was served (a) on the judge in chambers in the form and manner required by LBR 5005-2(d); and (b) in the manner stated below:

7

8

9

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **December 8, 2020**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

10

11

12

13

14

15

16

17

18

- Todd M Arnold     tma@lnbyb.com
- Thomas C Corcovelos     corforlaw@corforlaw.com
- Sarah M Cox     sarah@spectorcox.com, sarah@ecf.courtdrive.com;sshank@spectorcox.com
- Lazaro E Fernandez     lef17@pacbell.net, lef-sam@pacbell.net;lef-mari@pacbell.net;lefkarina@gmail.com;officelr74738@notify.bestcase.com
- Abram Feuerstein     abram.s.feuerstein@usdoj.gov
- Ramiro Flores Munoz     ramiro@rfmesq.com
- Anthony A Friedman     aaf@lnbyb.com
- David B Golubchik     dbg@lnbyb.com, stephanie@lnbyb.com
- Everett L Green     everett.l.green@usdoj.gov
- Howard B Grobstein (TR)     hbgtrustee@gtllp.com, C135@ecfcbis.com
- John R Lane     johnlaneassociates@gmail.com, mcountryman@jrl-law.com;johnlane@jrl-law.com;kedeen@jrl-law.com;jlongoria@jrl-law.com;bcervantez@jrl-law.com
- Thomas M McMurray     tom@tommcmurray.net, dara@tommcmurray.net
- David Samuel Shevitz     david@shevitzlawfirm.com, shevitzlawfirm@ecf.courtdrive.com;r48785@notify.bestcase.com;Jose@shevitzlawfirm.com
- United States Trustee (RS)     ustpregion16.rs.ecf@usdoj.gov

19

20

21

**2.  SERVED BY UNITED STATES MAIL**: On **December 8, 2020**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

22

23

24

Windsor Holdings, LLC
2621 Green River Road, #105-232
Corona, CA  92882

RSN
Home Tax Solutions, LLC
c/o Sarah M. Cox, Esq.
Law Office of Sarah M. Cox
12770 Coit Road, Suite 1100
Dallas, TX  75251

25

26

27

Williams Parties
c/o Thomas Corcovelos
Corcovelos Law Group
1001 Sixth Street, Suite 150
Manhattan Beach, CA  90266-6750

The Honorable Wayne E. Johnson
United States Bankruptcy Court
3420 Twelfth Street, Suite 384
Riverside, CA  92701

28

☐  Service information continued on attached page

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*

**F 9013-3.1.PROOF.SERVICE**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**3.    SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **December 8, 2020**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| December 8, 2020 | Lisa Masse | /s/ Lisa Masse |
|---|---|---|
| Date | Type Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**F 9013-3.1.PROOF.SERVICE**